**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Richard J. Hubbard, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:10-cv-00836-JOF |
| Clayton County School District, *d/b/a Clayton County Public Schools*, et al., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This matter is before the court on Defendants' Motions for Summary Judgment [71, 72], Plaintiff's Motion for Leave to File Excess pages [79], and Defendants' Motion for Leave to File Excess Pages [87].[1]

**I. Background**

   **A. Procedural History**

Plaintiff, Richard J. Hubbard, filed suit against Defendants, Clayton County School District, Clayton County Board of Education, former members of the Clayton County Board of Education, and former Clayton County School District Superintendents, on March 10, 2010, in the Superior Court of Clayton County. Defendants removed the action to this court on March 23, 2010. Plaintiff

---

[1] The parties request leave to file excess pages in their response and reply briefs. The court grants these requests.

alleges that Defendants retaliated against him for exercising his constitutional right to free speech.[2] On November 7, 2012, Defendants moved for summary judgment.

**B.    Facts[3]**

Defendant Clayton County School District is a public school district governed by a 9-member elected Board of Education ("the Board"). Defendants' Statement of Material Facts ("DSMF"), ¶ 1. During the relevant time period, the Board consisted of Defendants Michelle Strong, Lois Baines-Hunter, Yolanda Everett, Rod Johnson, Ericka Davis, Eddie White, David Ashe, Sandra Scott, and non-defendant Noreese Haynes. *Id.* ¶ 3.

Plaintff, Richard Hubbard, worked for Clayton County since August 1996 as a classroom teacher and then as an Assistant Principal. Am. Compl., ¶ 8; DSMF, ¶ 4. In May 2006, Hubbard was elected as President of the Georgia Association of Educators for a two-year term, beginning July 1, 2006, and ending June 30, 2008. Am. Compl., ¶ 9, 11. The Association is a "professional organization founded in 1970 that provides representation and leadership before local boards of education, the state legislature and state agencies on public education issues for Georgia's public education professionals." *Id.* ¶ 9. As part of his appointment, and at the Association's request, Hubbard and Clayton County entered into an "on-loan" agreement whereby Hubbard would remain

---

[2] Initially, Plaintiff also alleged that Defendants wrongfully terminated his employment in violation of the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, and state contract law. On March 7, 2011, the court dismissed these claims. D.E. [29]. The court also dismissed putative Defendant Clayton County School Board, a non-entity. *Id.*

[3] The following facts are largely undisputed. Where there are disputes, the court notes them.

2

an employee of Clayton County School District and accrue all employment benefits earned during his two years of service, and the Association would reimburse the School District for Hubbard's salary and benefits. *Id.* ¶ 11; DSMF, ¶ 6. While no written contract between the School District and the Association existed, the two entities exchanged correspondence reflecting Hubbard's on-loan status and the terms of the arrangement. D.E. [77-5, 77-6]; DSMF, ¶ 9. The practice of such on-loan agreements has been accepted in Clayton County and around Georgia for several decades. Chapman Decl., ¶ 13.

As President of the Georgia Association of Educators, Hubbard's job duties included media relations, press conferences, and lobbying activities with the Georgia legislature. DSMF, ¶ 7.

On Feburary 15, 2008, the Southern Association of Colleges and Schools (SACS) released its Report of the Special Review Team for Clayton County Public Schools. Am. Compl., ¶ 18; DSMF, ¶¶ 13-14. The report was unfavorable, criticizing the School District and various Defendant-members of the local Board of Education. That same day, Hubbard, in his "capacity" as President of the Georgia Association of Educators and "as an employee of Clayton County Public Schools," spent the morning lobbying at the State Capitol. Am. Compl., ¶¶ 22, 25. Hubbard made a statement at the State Capitol that "if the allegations in the SACS Report are true, then for the good of the children and the system, individuals on the Board should step down." *Id.* ¶ 26.

On March 3, 2008, 16 days after the issuance of the SACS report, Defendants revoked all "on loan agreements" by voting to rescind all employee leave not consistent with Board policy. DSMF, ¶ 22; Am. Compl., ¶ 28. This act affected four individuals, including Hubbard. Am. Compl., ¶ 29. Subsequently, in a letter dated March 12, 2008, Defendants ordered Hubbard to report to

3

Kendrick Middle School in one week to work as an assistant principal for the remainder of the 2007-2008 school year DSMF, ¶ 25; D.E. [77-16]. In response, Hubbard sent a letter dated March 13 asserting that, due to Defendants' retaliatory actions, he was forced to resign from his employment with the School District so that he could continue working for the Georgia Association of Educators. D.E. [77-18]. He also requested an immediate cash-out of his professional leave, which the School District provided. D.E. [77-18].

Hubbard later rescinded his resignation and sought unpaid leave for the remainder of his term as President of the Georgia Association of Educators. On April 2, 2008, the School District's in-house counsel emailed Hubbard's attorney stating that "[w]e have no problem allowing him to rescind his resignation." D.E. [77-20]. When Hubbard's status came before the Board at its April 14, 2008, meeting, however, the Board members tabled the issue. DSMF, ¶ 37.

Hubbard was re-elected as President of the Georgia Association of Educators for the 2008-2010 term. Am. Compl., ¶ 42. Hubbard asked Defendants for a contract for the 2008-2009 school year and also for the granting of unpaid professional leave for that contract year. *Id.* Defendants responded that Hubbard had resigned his employment and would not be given any unpaid leave status or a contract for the 2008-2009 school year. *Id.* ¶ 44.

## II.    Discussion

Hubbard alleges that Defendants retaliated against him because he made public comments as President of the Georgia Association of Educators criticizing their behavior and calling for some of their resignations. An employee bringing a First Amendment retaliation claim must establish,

4

among other things, that the employee spoke as a citizen.[4] *Battle v. Bd. of Regents*, 468 F.3d 755, 759-60 (11th Cir. 2006). The Supreme Court in *Garcetti v. Ceballos* held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. 410, 421 (2006). Pursuant to *Garcetti*, the court should consider whether the employee made his or her statement as a citizen who does not work for the government, and the inquiry is a "practical one." 547 U.S. at 424. The law regarding retaliation for protected speech extends to independent contractors working for the government as well as employees. *Heery Intern., Inc. v. DeKalb Cnty. Sch. Dist.*, No. 1:08-CV-1560-JOF, 2009 WL 481656, at *3 (Feb. 25, 2009) (Forrester, J.).

Hubbard admits that his statements were made pursuant to his official job duties as President of the Georgia Association of Educators. Pl.'s Resp. Brief, at 2. The parties dispute whether these statements were also made as an employee of the School District. The court finds that it need not decide this question, however, because the analysis for First Amendment retaliation claims also applies to independent contractors working for the government. *Heery*, 2009 WL 481656, at *3. Hubbard was contracted out to the Association for a term of two years while he served as its President. The School District and Association had an "on-loan" agreement setting forth the terms

---

[4] The parties appear to agree that analysis of Hubbard's free speech retaliation claim under the Georgia Constitution is the same as for his First Amendment claim. The court assumes, without deciding, that this is the case. At least one court has so held. *See Palmer v. Stewart Cnty. Sch. Dist.*, No. 4:04-CV-21(CDL), 2005 WL 1676701, at *12 (M.D. Ga. June 17, 2005), *vacated in part on other grounds*, 178 Fed. Appx. 999 (11th Cir. 2006).

AO 72A
(Rev.8/82)

under which Hubbard would work for the Association, and written correspondence reflected this arrangement. Thus, Hubbard, speaking as President of the Association, fell somewhere on the spectrum between public employee and independent government contractor. But speech made pursuant to official duties as a public employee or government contractor is not protected from discipline. Accordingly, whether Hubbard was speaking as a public employee, an independent government contractor, or something in between, his First Amendment retaliation claim must fail.

**III.   Conclusion**

For the foregoing reasons, the court GRANTS Defendants' Motions for Summary Judgment [71, 72], GRANTS Plaintiff's Motion for Leave to File Excess pages [79], and GRANTS Defendants' Motion for Leave to File Excess Pages [87]. The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiff's First Amended Complaint.

**IT IS SO ORDERED** this 16th day of April, 2013.

    S/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)